CHRISTOPHER W. DECKER, CA Bar No. 229426
christopher.decker@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

ORI LAVI, CA Bar No. 355035
ori.lavi@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA 94111
Telephone: 415-442-4810
Facsimile: 415-442-4870

Attorneys for Defendants
NRG ENERGY, INC. and VIVINT LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JOHNNY BANKS, on behalf of himself and others similarly situated,

Plaintiff,

v.

NRG ENERGY, INC., a Delaware corporation; VIVINT LLC, a Utah limited liability company; and DOES 1 through 50, inclusive,

Defendants.

Case No. 5:26-cv-07792

**DEFENDANTS NRG ENERGY, INC. AND VIVINT LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**

*[Filed concurrently with Certification of Interested Parties; Corporate Disclosure Statement; Notice of Pendency of Other Actions; and Declarations of Peng Yan, Christopher Hawkins, Christine Zoino and Christopher W. Decker in support of Removal]*

Complaint Filed: May 11, 2026
Trial Date: None Set
Judge: Hon. XX

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF JOHNNY BANKS AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** defendants NRG Energy, Inc. ("NRG") and Vivint LLC ("Vivint") (together, "Defendants" or the "Company"), by and through the undersigned counsel, hereby remove the above-entitled action from the Superior Court of the State of California for the County of Santa Clara to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. sections 1332, 1441(a), 1446, and 1453. In support of such removal, Defendants state as follows:

## I. BACKGROUND

1. On or about March 6, 2026, plaintiff Johnny Banks ("Plaintiff") commenced this action by filing an unverified Class Action Complaint ("Complaint") in the Superior Court of California, County of Santa Clara, captioned *Johnny Banks v. NRG Energy, Inc. and Vivint LLC.*, and bearing case number 26CV488757 (the "State Court Action"). (True and correct copies of the Complaint, Civil Case Cover Sheet, and Summons are attached as **Exhibit A** to this Notice of Removal ["Notice"].)

2. On or about March 16, 2026, Plaintiff served Defendant with the Summons, Complaint, and Civil Case Cover Sheet. (Declaration of Christopher W. Decker ["Decker Decl."], ¶ 2.)

3. On or about May 11, 2026, plaintiff filed an unverified First Amended Complaint in the Superior Court of California, County of Santa Clara, captioned *Johnny Banks v. NRG Energy, Inc. and Vivint LLC.*, and bearing case number 26CV488757 (the "State Court Action"). (A true and correct copy of the First Amended Complaint is attached as **Exhibit B** to this Notice of Removal ["Notice"].)

4. The First Amended Complaint asserts claims for: (1) Failure to Pay Minimum Wages, (2) Failure to Pay Wages and Overtime Under Labor Code §510, (3) Meal-Period Liability Under Labor Code § 226.7, (4) Rest-Break Liability Under Labor Code § 226.7, (5) Failure to Pay Vacation Wages, (6) Failure to Comply with Labor Code §§ 245 *et seq.* and 246, (7) Violation of

Labor Code § 226(a), (8) Reimbursement of Necessary Expenditures Under Labor Code § 2802, (9) Failure to Keep Required Payroll Records Under Labor Code §§ 1174 and 1174.5, (10) Penalties Pursuant to Labor Code § 203, (11) Failure to Comply with Labor Code § 2751; (12) Violation of Business & Professions Code § 17200 *et seq.*; and (13) Penalties Pursuant to Labor Code § 2699, *et seq.*

5. On March 23, 2026, Judge Theodore C. Zayner of the Santa Clara County Superior Court issued an Order Deeming Case Complex and Staying Discovery and Responsive Pleading Deadline ("Complex Order"). (A true and correct copy of the Case Assignment Order is attached as **Exhibit C** to this Notice.)

6. On March 23, 2026, Plaintiff served Defendant with the Order Deeming Case Complex and Staying Discovery and Responsive Pleading Deadline. (Decker Decl., ¶ 4 .)

7. On June 18, 2026, the Court served Defendants with a Notice of Reset Hearing.) (A true and correct copy of the Notice of Reset Hearing is attached as **Exhibit D** to this Notice.)

8. On July 23, 2026, Plaintiff filed and served a Joint Initial Status Conference Statement. (A true and correct copy of the Answer is attached as **Exhibit E** to this Notice.)

9. As required by 28 U.S.C. section 1446(a), Defendants have provided this Court with copies of all pleadings, process, or orders received by Defendants in the State Court Action. Defendants have not been served with any pleadings, process, or orders besides those that are attached to the Notice of Removal. (Decker Decl., ¶ 7.)

10. As set out more fully below, based on the allegations of the Complaint and other evidence collected by Defendants, this Court has original jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. section 1332(d), and hence the action may be removed by Defendants pursuant to 28 U.S.C. sections 1441 and 1453. Original jurisdiction exists here because there are at least 100 class members in plaintiff's proposed class, the combined claims of all class members exceed $5,000,000 exclusive of interest and costs, and each Defendant is a citizen of a different state than at least one class member. *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).

## II. DEFENDANT HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

### A. Timeliness

11. The time to remove under 28 U.S.C. section 1446(b) does not begin to run until ***receipt by the defendant***, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). Here, the four corners of the Complaint do not provide readily ascertainable grounds for removal. *See generally* Compl; Prayer for Relief. The Complaint does not allege sufficient facts to calculate the amount in controversy with reasonable certainty as to the individually named plaintiff or as to the putative class. The Complaint does not allege the size of any putative class nor does it allege any claim under federal law. Accordingly, as mentioned, it is not possible to ascertain from the Complaint that this case is removable, and, to date, Defendant has not received any other document which would constitute an "other pleading, motion, order or other paper" providing this missing information. (Decker Decl. ¶ 7.) Accordingly, the time to remove this action has not yet begun. Where the time to remove has not yet expired, a defendant may remove at any time if it uncovers evidence establishing that the case is removable. *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013). As set forth below, Defendant has only recently discovered such evidence after an arduous collection and review of all records of potential class members and a complex analysis of the estimated damages allocated to each cause of action. Therefore, Defendant is timely removing this case based on that discovery.

12. This Notice is also timely because Defendant's calculations based on its records in support of the Notice cannot trigger the time to remove, as those calculations are not an amended pleading, motion, order or other paper *received* by Defendant. "The 'other paper' in section 28 U.S.C. section 1446(b)(3) cannot be one created by defendant; it 'must derive from either the voluntary act of the plaintiff … or other acts or events not the product of the removing defendant's activity.'" *Adelpour v. Panda Express, Inc.*, 2010 WL 2384609, *4 n.7 (C.D. Cal. June 8, 2010) (citation omitted); *Mejia v. General Motors LLC*, 2025 WL 2983127, *4 (Oct. 22, 2025) (The deadline to remove "begins running upon 'defendant's receipt of a document from the plaintiff or the

state court—*not by any action of defendant.*'") (emphasis added) (citation omitted); *Hip Hop Beverage Corp. v. Michaux*, 2016 WL 4034777, *4 (C.D. Cal. July 25, 2016) ("[F]acts discovered during an independent investigation do not trigger the removability clock"); *Owens v. L'Occitane, Inc.*, 2013 WL 941967, *8 (C.D. Cal. March 8, 2013) ("The requirement that the removing defendant receive a pleading or 'other paper' means that the 'document that triggers the thirty-day removal period cannot be one created by the defendant…"). Therefore, this Notice is timely.

**B. Venue**

13. The Superior Court of California for the County of Santa Clara is located within the Northern District of California. Therefore, the action is properly removed to this Court pursuant to 28 U.S.C. section 84(d) because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

**C. Procedural Requirements**

14. Pursuant to 28 U.S.C. section 1446(a), copies of all process, pleadings, and orders served upon Defendant and filed by Defendant are attached to this Notice. (Decker Decl., ¶ 7.)

15. Pursuant to 28 U.S.C. section 1446(d), a copy of the Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Superior Court of California in the County of Santa Clara. True and correct copies of the Notice to the Plaintiff and the state court shall be filed promptly.

## III. THE CASE IS REMOVABLE PURSUANT TO CAFA.

16. As set forth below, Plaintiff's claims as alleged in the Complaint are removable under 28 U.S.C. § 1332(d).

17. Under CAFA, the Federal District Court has jurisdiction if:

(a) There are at least 100 class members in all proposed plaintiff classes; and

(b) The combined claims of all class members exceed $5 million exclusive of interest and costs; and

(c) Any class member (named or not) is a citizen of a different state than any defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), and 1453(a).

18. In *Dart Cherokee Basin Operating Co. v. Owens*, 132 S.Ct. 547 (2014), the U.S. Supreme Court provided significant clarification to the standards applicable to notices of removal in CAFA cases, establishing a much more liberal standard in favor of removing defendants. In *Dart Cherokee,* the U.S. Supreme Court held that a removal must only contain "a short and plain statement of the grounds for removal." *Id.* at 553 (quoting 28 U.S.C. § 1446(a)). The Court noted that this same language is used for the pleading standard in Rule 8(a) of the Federal Rules of Civil Procedure. *Id.* The use of this language in the removal statute was intentional—clearly indicating that courts should apply the same liberal pleading standards to notices of removal as they should to plaintiffs' complaints and other pleadings. *Id.* The Court further held that a removing defendant need not submit evidence with its pleading that establishes that the elements of federal subject matter jurisdiction are met. *Id.* at 552-53. Only if the court or another party challenges jurisdiction should the court require a removing defendant to prove, under the applicable "preponderance" standard, that the jurisdictional requirements are met. *Id.* at 553-54. The Court summarized its holding as follows: "[i]n sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by §1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* at 554. Also, there is no "presumption against removal" in CAFA cases, because CAFA was specifically enacted by Congress "to facilitate adjudication of certain class actions in federal court." *Id.*

**A. <u>There are at least 100 class members in Plaintiff's Proposed Class.</u>**

19. In this action, Plaintiff seeks to represent a proposed class defined as follows: "all individuals employed by Defendants as non-exempt employees within the State of California at any time within four (4) years of the filing of this lawsuit." (FAC ¶ 28.)

20. Plaintiff also proposes twelve subclasses, including a "Termination Pay Subclass" defined as "[a]ll Class members who, within the applicable limitations period, either voluntarily or involuntarily separated from their employment and were subject to Defendants' policy and/or practice of failing to timely pay wages upon termination." (FAC ¶ 29.)

21. Plaintiff's First Amended Complaint does not identify the precise number of individuals in the putative class, alleging only that "[t]he potential members of the class as defined are so numerous that joinder of all the member of the class is impracticable," while further alleging that Defendants "employ or, during the time period relevant to this lawsuit, employed more than 100 individuals" within the State of California. (FAC ¶ 32.) Based on a review and analysis of the business records of the Company, the Company has employed at least 791 individuals (the "Putative Class Members") who worked at any time for the Company in California during the Applicable Period and were paid as non-exempt/hourly employees. (Declaration of Peng Yan ["Yan Decl."] ¶ 7.) Thus, the first requirement for CAFA jurisdiction is satisfied.

22. Based on the above, there are more than 100 putative class members in Plaintiff's proposed class.

**B. <u>The Combined Claims of All Putative Class Members Exceed $5 Million Exclusive of Interest and Costs.</u>**

23. Based on Plaintiff's allegations in the Complaint and other evidence collected by Defendant, the aggregate value of the claims of Plaintiff's proposed class exceeds the $5 million threshold needed to establish federal jurisdiction under the Class Action Fairness Act. The $5 million jurisdictional minimum may be based on aggregation of the claims of all potential class members. 28 U.S.C. § 1132(d)(6).

24. With respect to CAFA's $5,000,000 threshold for the "amount in controversy," it is not the same as the amount ultimately recovered. *Lara v. Trimac Transp. Servs. Inc.*, 2010 WL 3119366 at *3 (C.D. Cal. Aug. 6, 2010). Rather, in assessing the amount in controversy, a court must "assume that all the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiffs on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint, not what Defendant will actually owe. *Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005). In other words, "the amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir.

2010) (citing *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008). "The amount in controversy is determined by the universe of what the Plaintiff puts at-issue in the complaint." *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *6 (E.D. Cal. July 14, 2010).

25. To establish the amount in controversy, a defendant "need not concede liability for the entire amount," and it is error for a district court to require such a showing. *Lewis*, *supra*, 627 F.3d at 400; see also *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated."); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (stating that "[t]he amount-in-controversy inquiry in the removal context is not confined to the face of the complaint," and that the court may also consider summary-judgment-type evidence relevant to the amount in controversy at the time of removal) (citations omitted).

26. Furthermore, a defendant's assumptions in an amount in controversy calculation does not require actual proof, but rather it need only show "reasonable grounds" for the assumptions. *Arias v. v. Residence Inn,* 936 F.3d 920, 927 (9th Cir. 2019). Defendant's estimate of the amount-in-controversy, as set forth below, is conservative in nature as it relies on conservative assumptions as to the frequency of off-the-clock minimum and overtime unpaid wages, meal period and rest break violations, penalties for inaccurate wage statements, and waiting time penalties alleged in the Complaint.[1]

27. As shown below, the evidence shows that Plaintiff's causes of action place more than $5 million in controversy.

**1. Plaintiff's First Cause of Action for Unpaid Minimum Wages Places at least $756,168 in Controversy.**

28. Plaintiff's First Cause of Action seeks unpaid minimum wages for the time that Plaintiff and members of the proposed Class were not paid, including "(1) pre-shift by doing inventory and stocking trucks; (2) post-shift by answering phone calls from management after

---

[1] Defendant reserves the right to present additional information regarding the amount placed in controversy by Plaintiff's causes of action in response to any Motion to Remand or Order to Show Cause challenging the propriety of this Removal.

clocking out; (3) off the clock by answering phone calls from customers; and (4) while clocked out for meal breaks." (FAC ¶ 40.)

29. Specifically, Plaintiff alleges that Defendants had a "consistent policy of misstating Employees [sic] time records and failing to pay Employees for all hours worked." Plaintiff further alleges that Defendants had a "uniform pattern of unlawful wage and hour practices" which "manifested, without limitation, applicable to the Class as a whole, as a result of implementing a uniform policy and practice that denied accurate compensation to Plaintiff and the other members of the Class as to minimum wage pay." (FAC ¶ 40.)

30. Plaintiff further alleges that, "from at least four (4) years prior to the filing of this lawsuit and continuing to the present, Defendants had a consistent policy or practice of failing to pay Employees for all hours worked and failing to pay minimum wage for all time worked as required by California Law." (FAC ¶ 17.)

31. Plaintiff further alleges that "Defendants thus regularly failed to pay minimum wages to Plaintiff and Class members," and that "Defendants did not pay Plaintiff and Employees at the applicable minimum wage for all hours worked." (FAC ¶ 40.)

32. Under Labor Code sections 1194 and 1194.2, an employee is entitled to at least minimum wage for all hours worked, and when that amount is not paid, liquidated damages in the amount of the unpaid minimum wage.

33. Plaintiff seeks unpaid minimum wages for "off-the-clock" work for all "Employees," "from at least four (4) years prior to the filing of this action." (FAC, Prayer for Relief, Nos. 2-3.) The FAC further defines "Employees" as "all others similarly situated," (FAC, preamble). Plaintiff further states that he "brings this action on behalf of himself and all current and former Employees within the State of California who, at any time four (4) years prior to the filing of this lawsuit, are or were employed as non-exempt, hourly employees by Defendants NRG Energy, Inc. . . . [or] Vivint LLC . . ." (FAC ¶ 1.) Plaintiff expressly defines the "proposed class" as "all individuals employed by Defendants as non-exempt employees within the State of California at any time within four (4) years of the filing of this lawsuit." (FAC ¶ 28.)

34. Accordingly, if the allegations of the Complaint and Plaintiff's legal theories are correct, Defendant would owe additional compensation and liquidated damages to each individual employed in a non-exempt position in California who was subjected to "off-the-clock" work for all such time from March 6, 2022, to the present. *See Herrera v. C&J Clark America, Inc.*, 2025 WL 3171593 (N.D. Cal. Nov. 13, 2025) (amount placed in controversy by claim for wage statement penalties includes the entire four-year class period, regardless of possible shorter limitations period for wage statement claim).

35. Therefore, if the allegations are true, Defendant would owe additional compensation and liquidated damages to each individual employed in a non-exempt position in California who was subjected to "off-the-clock" work for all such time from March 6, 2022, to the present.

36. Plaintiff's First Amended Complaint does not allege the number of hours for which Plaintiff and class members allegedly worked "off-the-clock." Plaintiff only alleges that "Defendants failed to pay Employees minimum wages for all hours worked. Defendants had a consistent policy of misstating Employees time records and failing to pay Employees for all hours worked." (FAC ¶ 40.)

37. Because the Complaint does not allege any particular amount of time Plaintiff and class members were purportedly made to work "off-the-clock," Defendants may assume a reasonable violation rate for purposes of calculating the amount in controversy as to the Unpaid Minimum Wages claim. *See Mariscal v. Arizona Tile, LLC*, 2021 WL 1400892 (C.D. Cal. April 14, 2021), ("[Plaintiff's] Complaint alleges that [defendant] has 'engaged in a pattern and practice' of wage abuse by, among other things, 'failing to pay them for all regular and/or overtime wages earned,' [citation]; therefore, an assumption that each putative class member worked one hour of unpaid overtime per workweek is reasonable.")

38. When determining the amount placed in controversy by Plaintiff's allegations that Defendants had a "consistent policy or practice," "uniform pattern of unlawful wage and hour practices", "uniform policy and practice" and "regularly failed to pay minimum wages to Plaintiff and Class members," a violation rate of one hour per workweek is reasonable. *See e.g. Francisco v. Emeritus Corporation*, 2017 WL 2541401, *7 (C.D. Cal. June 12, 2017) ("Because Plaintiff claims

that unpaid minimum wage and overtime violations occurred regularly, as a pattern and practice, the Court finds Defendants' assumption of one minimum wage and overtime violation per workweek to be reasonable."); *Lewis v. Arvato Digital Services, LLC*, 2025 WL 1554331, *3 (C.D. Cal. May 28, 2025) (finding an assumption of one hour of unpaid regular wages per week was reasonable when plaintiff alleged a "policy and practice" and no further distinctions.); *Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, *5 (C.D. Cal. Dec. 3, 2019) (finding reasonable defendant's assumption that the class members were not compensated for one hour of minimum wages per week where plaintiff alleges a "pattern and practice" of wage abuse.); *Soto v. Greif Packaging, LLC*, 2018 WL 1224425, *3 (C.D. Cal. Mar. 8, 2018) (finding reasonable defendant's assumption that the plaintiff and class members were not compensated for one hour of minimum wage per work week when plaintiff alleged violations on a "consistent and regular basis.")

39. Based on the Company's records, the Company has employed at least 791 individuals in non-exempt positions in California from March 6, 2022, to April 13, 2026. (Yan Decl. ¶ 7.) The analysis of the Company's records also showed that during the time period from March 6, 2022, to April 13, 2026, these employees, collectively, worked at least 54,012 full-time equivalent workweeks (40 hours worked = 1 full-time equivalent workweek). (Yan Decl. ¶ 8.)

40. Using a conservative calculation, if each employee were entitled to an additional hour of compensation at the legal minimum wage for each full-time equivalent workweek, they would be entitled to at least $14.00 in unpaid minimum wages[2], for each of the 54,012 full-time equivalent workweeks during the time period from March 6, 2022, to April 13, 2026. In total, Plaintiff and the class members would be entitled to $756,168 (54,012 full-time equivalent workweeks * 1.0 hours/week of unpaid minimum wages * $14.00/hour = $756,168.).

41. Therefore, the amount placed in controversy by Plaintiff's Unpaid Minimum Wages claim is at least $756,168.[3]

---

[2] The lowest legal minimum wage in effect between October 8, 2021, to October 28, 2025 for an employer of more than 25 employees was $14.00/hour. *See* "History of California Minimum Wage," available at https://www.dir.ca.gov/iwc/minimumwagehistory.htm.

[3] Plaintiff also alleges they are entitled to liquidated damages. (FAC ¶ 47; Prayer for Relief, ¶ 3). As such, Plaintiff and class members damages for unpaid wages may be doubled, adding an additional $473,508 to the amount in controversy.

**2. Plaintiff's Third Cause of Action for Meal Periods Violations Places at least $1,508,015.04 in Controversy.**

42. Plaintiff's Third Cause of Action seeks premium wages for Defendants' alleged failure to provide meal periods as required by law. (FAC ¶¶ 55-59.)

43. Specifically, Plaintiff alleges that Defendants "have required Employees to work shifts in excess of five (5) hours without providing them with timely, off-duty meal periods of not less than thirty (30) minutes and shifts in excess of ten (10) hours without providing them with second meal periods of not less than thirty minutes." (FAC ¶ 19.)

44. Plaintiff further alleges that "Employees regularly worked shifts greater than five (5) hours and greater than ten (10) hours," and that Defendants "failed to provide Employees with compliant meal periods as required under the Labor Code." (FAC ¶¶ 56-57.)

45. Plaintiff further alleges that "Employees were regularly required to work for more than 10 hours in a given shift without receiving a second thirty (30) minute meal period as required by law." (FAC ¶ 57.)

46. Plaintiff further alleges that "Employees were required to clock out and continue working through their meal periods which they were denied," and that "Employees were required to keep their cell phones on and respond to them during meal periods resulting in on-duty and interrupted meal periods." (FAC ¶ 57.)

47. Plaintiff further alleges that, "when Defendants did pay meal period premiums, they did so at the normal regular rate of pay without factoring in all forms or remuneration/compensation or by otherwise incorrectly calculating the regular rate." (FAC ¶ 58.)

48. Plaintiff further alleges that, "pursuant to Labor Code § 226.7, Employees are entitled to damages in an amount equal to one (1) hour of wages at their effective hourly rates of pay for each meal period not provided or deficiently provided, a sum to be proven at trial." (FAC ¶ 59.)

49. Plaintiff seeks unpaid premium wages for meal period violations for all "Employees," "from four (4) years prior to the filing of this action." (FAC, Prayer for Relief, No 4.) The FAC further defines "Employees" as "all others similarly situated," (FAC, preamble). Plaintiff further states that he "brings this action on behalf of himself and all current and former Employees within

the State of California who, at any time four (4) years prior to the filing of this lawsuit, are or were employed as non-exempt, hourly employees by Defendants NRG Energy, Inc. . . . [or] Vivint LLC . . ." (FAC ¶ 1.) Plaintiff expressly defines the "proposed class" as "all individuals employed by Defendants as non-exempt employees within the State of California at any time within four (4) years of the filing of this lawsuit." (FAC ¶ 28.)

50. Accordingly, if the allegations of the Complaint are true, Defendants owe each individual employed in a non-exempt position in California an additional hour of pay for each work day between September 19, 2021 and the present that such individual either did not receive a meal break prior to their fifth hour of work or did not receive a second meal break on days when employee worked ten hours of work or more.

51. The Complaint does not allege the number of meal periods not provided to Plaintiff or putative class members for which premium pay is due. Therefore, Defendants may assume a conservative violation rate to calculate the amount in controversy as to Plaintiff's Meal Period claim. *See Perez v. Rose Hills Co.*, 131 F.4th 804, 810 (9th Cir. 2025) (approving violation rate of one hour of unpaid straight time, one hour of overtime pay, one hour of meal period premiums, and one hour of rest period premiums per workweek per putative class employee where plaintiff used "at times" language in the Complaint.)

52. Where a class action complaint alleging failure to provide meal periods does not provide this detail, courts in the Ninth Circuit, especially this district, have held that assuming a 20% violation rate, or one missed meal period per week of full-time employment, is reasonable. *See e.g., Mendieta v. Williams Scotsman, Inc.*, 2025 WL 104095, *4 (C.D. Cal. Jan. 15, 2025) ("It is reasonable for Defendant to assume a 25% violation rate [for the meal period claim] where Plaintiff has alleged a 'policy and practice' violation."); *Garcia v. William Scotsman, Inc.*, 2024 WL 4289895 at *5 (C.D. Cal. Sept. 25, 2024) (accepted 20% violation rate because plaintiff alleged a "pattern and practice" of meal period and rest break violations, and notes this violation rate, "has been upheld based on similar pleading language and called 'conservative' by this district."); *Salazar v. PODS Enters., LLC*, 2019 WL 2023726, *2-3 (C.D. Cal. May 8, 2019) (holding that calculations using a 20% violation rate was conservative and reasonable where complaint alleged "pattern and practice"

of meal and rest break violations."); *Mendoza v. Savage Services Corp.*, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) (finding that a 20% violation rate for meal and rest breaks was reasonable where the complaint alleged a "pattern and practice" of violations, and noting that courts in the Central District of California "routinely apply a 20% violation rate . . . for meal and rest period premiums" and citing cases).

53. Based on the Company's records, the Company has employed at least 791 individuals in non-exempt positions in California from March 6, 2022, to April 13, 2026. (Yan Decl. ¶ 7.) The analysis of the Company's records also showed that during the time period from March 6, 2022, to April 13, 2026, these employees, collectively, worked at least 54,012 full-time equivalent workweeks (40 hours worked = 1 full-time equivalent workweek). (Yan Decl. ¶ 8.) The average hourly rate of pay for the 791 class members was calculated to be $27.92/hour. (Yan Decl. ¶ 11.)

54. If a conservative 20% violation rate is used, there would one meal period violation for each full-time equivalent workweek (1 violation for every 40 hours worked), a total of 54,012 meal period violations for the putative class as a whole for the entire relevant time period. Collectively, the putative class would be entitled to $1,508,015.04 (54,012 meal period violations * $27.92 meal period premium = $1,508,015.04) in meal period premium wages.

55. Thus, Plaintiff's Third Cause of Action places at least $1,508,015.04 in controversy.

**3. Plaintiff's Fourth Cause of Action for Failure to Provide Rest Periods Places at least $1,508,015.04 in Controversy.**

56. Plaintiff's Fourth Cause of Action seeks premium wages for Defendants' alleged failure to provide rest breaks as required by law. (FAC ¶¶ 60-64.)

57. Specifically, Plaintiff alleges that Defendants "have failed to provide Employees with paid rest breaks of not less than ten (10) minutes for every work period of four (4) or more consecutive hours; nor did Defendant pay Employees premium pay for each day on which requisite rest breaks were not provided or were deficiently provided …" (FAC ¶ 20.)

58. Plaintiff further alleges that "Defendants failed to provide Employees with timely, uninterrupted rest breaks of not less than ten (10) minutes for each consecutive four (4) hour shift." (FAC ¶ 62.)

59. Plaintiff further alleges that "Employees consistently worked consecutive four (4) hour shifts" and were "entitled to paid rest breaks of not less than ten (10) minutes for each consecutive four (4) hour shift." (FAC ¶ 61.)

60. Plaintiff further alleges that "Defendants failed to compensate Employees for each rest period not provided or inadequately provided, as required under Labor Code § 226.7 and the applicable IWC Wage Orders." (FAC ¶ 63.)

61. Plaintiff further alleges that "when Defendants did pay rest period premiums, they did so at the normal regular rate of pay without factoring in all forms or remuneration/compensation or by otherwise incorrectly calculating the regular rate." (FAC ¶ 63.)

62. Plaintiff further alleges that, "pursuant to Labor Code § 226.7, Employees are entitled to damages in an amount equal to one (1) hour of wages at their effective hourly rates of pay for each day worked without the required rest breaks, a sum to be proven at trial." (FAC ¶ 64.)

63. Plaintiff seeks unpaid premium wages for rest break violations for all "Employees," "from at least four (4) years prior to the filing of this action." (FAC, Prayer for Relief, No. 5.) The FAC further defines "Employees" as "all others similarly situated," (FAC, preamble). Plaintiff further states that he "brings this action on behalf of himself and all current and former Employees within the State of California who, at any time four (4) years prior to the filing of this lawsuit, are or were employed as non-exempt, hourly employees by Defendants NRG Energy, Inc. . . . [or] Vivint LLC . . ." (FAC ¶ 1.) Plaintiff expressly defines the "proposed class" as "all individuals employed by Defendants as non-exempt employees within the State of California at any time within four (4) years of the filing of this lawsuit." (FAC ¶ 28.)

64. Accordingly, if the allegations of the Complaint are true, Defendants owe each individual employed in a non-exempt position in California an additional hour of pay for each workday between September 19, 2021 and the present that such individual worked in excess of 3.5 hours without receiving a rest break.

65. The Complaint does not allege the number of rest breaks not provided to Plaintiff or putative class members for which premium pay is due. Therefore, Defendant may assume a conservative violation rate to calculate the amount in controversy as to Plaintiff's Rest Period claim.

*See Perez*, *supra*, 131 F.4th at 810 (9th Cir. 2025) (approving violation rate of one hour of unpaid straight time, one hour of overtime pay, one hour of meal period premiums, and one hour of rest period premiums per workweek per putative class employee where plaintiff used "at times" language in the Complaint.)

66. Where a class action complaint alleging failure to provide rest breaks does not provide this detail, courts in the Ninth Circuit and in other districts have held that assuming a 20% violation rate, or one missed rest period per week of full-time employment, is reasonable. *See e.g.*, *Moore v. Saia Motor Freight Line, LLC*, 2025 WL 2217428, *3 (C.D. Cal. Aug. 4, 2025) (finding "an assumption of a 25% violation rate is reasonable when a plaintiff alleges the violations occur … regularly, or are the result of a policy and practice.") *Rombaut v. U.S. Concepts LLC*, 2025 WL 2044670, *6 (C.D. Cal. July 18, 2025) (finding 20% violation rate to be reasonable when Plaintiff alleged violations occurred "often" and defendants had a "policy and practice" of denying breaks.); *Ortiz-Dixon v. FedEx Ground Package Sys., Inc.*, 2023 WL 9064893, *3 (C.D. Cal. Dec. 7, 2023) (holding a 20% violation rate assumption to be reasonable where allegations are coupled with "pattern and practice" allegations in the complaint."); *Baker v. Propak Logistics, Inc.*, 2019 WL 4168998, *4 (C.D. Cal. Sep. 3, 2019) (holding a 20% violation rate was reasonable when plaintiff alleged a "pattern and practice" of rest break violations.).

67. Based on the Company's records, the Company has employed at least 791 individuals in non-exempt positions in California from March 6, 2022, to April 13, 2026. (Yan Decl. ¶ 7.) The analysis of the Company's records also showed that during the time period from March 6, 2022, to April 13, 2026, these employees, collectively, worked at least 54,012 full-time equivalent workweeks (40 hours worked = 1 full-time equivalent workweek). (Yan Decl. ¶ 8.) The average hourly rate of pay for the 791 class members was calculated to be $27.92/hour. (Yan Decl. ¶ 11.)

68. If a conservative 20% violation rate is used, there would one rest break violation for each full-time equivalent workweek (1 violation for every 40 hours worked), a total of 54,012 rest break violations for the putative class as a whole for the entire relevant time period. Collectively, the putative class would be entitled to $1,508,015.04 (54,012 rest break violations * $27.92 rest break premium = $1,508,015.04) in rest break premium wages.

69. Thus, Plaintiff's Third Cause of Action places at least $1,508,015.04 in controversy.

**4. Plaintiff's Seventh Cause of Action for Non-Complaint Wage Statements Places at least $2,413,700 in Controversy.**

70. Plaintiff's Seventh Cause of Action seeks penalties under California Labor Code section 226 for failure to provide accurate itemized wage statements. (FAC ¶¶ 75, 77.) The applicable penalty is fifty dollars for the initial pay period in which a violation occurs, and one hundred dollars for each violation in a subsequent pay period, up to a maximum aggregate penalty of four thousand dollars. Cal. Lab. Code § 226(e).

71. Specifically, Plaintiff alleges that Defendants "consistently failed to provide Employees with timely, accurate, and itemized wage statements …" (FAC ¶ 21.)

72. Plaintiff further alleges that "the wage statements given to Employees, by Defendants, failed to accurately account for wages, overtime, and premium pay for deficient meal periods and rest breaks, all of which Defendants knew or reasonably should have known were owed to Employees," and that "Employees' wage statements did not include: the total hours worked in violation of Labor Code § 226(a)(2) and failed to accurately set forth all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each such rate in violation of Labor Code § 226(a)(9)." (FAC ¶ 75.)

73. Plaintiff further alleges that, "[a]s a direct and proximate cause of Defendants' violation of Labor Code § 226(a), Employees suffered injuries, including among other things confusion over whether they received all wages owed them." (FAC ¶ 76.)

74. Plaintiff further alleges that these injuries include "the difficulty and expense involved in reconstructing pay records, and forcing them to make mathematical computations to analyze whether the wages paid in fact compensated them correctly for all hours worked." (FAC ¶ 76.)

75. Plaintiff further alleges that, "[p]ursuant to Labor Code §§ 226(a) and 226(e), Employees are entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)." (FAC ¶ 77.)

76. As noted above, for purposes of calculating the amount-in-controversy, this Court can and should assume that each putative class member experienced one meal period violation and one rest period violation for every five meal-period eligible shifts, and worked at least one hour each week for which minimum and/or overtime wages were due but not paid. On those reasonable assumptions, each putative class member would be owed at least one meal period premium for every five shifts worked of more than five hours, one rest break premium for every five shifts worked of more than 3.5 hours, and one hour of minimum and/or overtime wages for each week in which he/she worked. As these wages were not paid to them, they did not appear on the wage statement issued to them. Accordingly, if Plaintiff's allegations and legal theories are correct, each wage statement issued to putative class members during the relevant time period did not accurately state all gross and net wages earned, or all hours worked. *See e.g. Nieves v. Centerra Integrated Fleet Services, LLC*, 2025 WL 2155373, *6 (C.D. Cal. July 29, 2025) ("this Court, and other courts within this circuit, have repeatedly found it 'appropriate for Defendant to assume a 100% violation rate as to the derivative wage statement and waiting time claims."); *Valero v. MKS Instruments*, 2025 WL 72171, *5 (C.D. Cal. Jan. 8, 2025) (holding a 100% wage statement violation is appropriate when it is "derivative of the other class claims."); *Garcia*, *supra*, 2024 WL 4289895, *8 (finding 100% violation rate reasonable where complaint alleged wage statement inaccuracies as derivative of other claims resulting from "pattern and practice" and of "intentional and willful" failure to provide accurate wage statements.).

77. The California Labor Code provides for a penalty of $50.00 for the initial pay period in which a violation of Labor Code section 226(a) occurred, and $100.00 for each subsequent pay period in which a violation of Labor Code section 226(a) occurred, not to exceed an aggregate penalty of $4,000.00 per class member. Cal. Lab. Code § 226(e).

78. Plaintiff seeks penalties pursuant to Labor Code section 226(e) for all "Employees," (FAC, Prayer for Relief No. 6), and defines "Employees" as "all others similarly situated," (FAC, preamble). Plaintiff further states that he "brings this action on behalf of himself and all current and former Employees within the State of California who, at any time four (4) years prior to the filing of this lawsuit, are or were employed as non-exempt, hourly employees by Defendants NRG Energy,

Inc. . . . [or] Vivint LLC . . ." Plaintiff expressly defines the "proposed class" as "all individuals employed by Defendants as non-exempt employees within the State of California at any time within four (4) years of the filing of this lawsuit." (FAC ¶ 28.)

79. Accordingly, if the allegations of the Complaint and Plaintiff's legal theories are correct, any individual employed by Defendant in a non-exempt position in California on or after March 6, 2022 through present would be entitled to penalties under California Labor Code section 226(e) for each wage statement issued during that time period. *See Herrera v. C&J Clark America, Inc.*, 2025 WL 3171593 (N.D. Cal. Nov. 13, 2025) (amount placed in controversy by claim for wage statement penalties includes the entire four-year class period, regardless of possible shorter limitations period for wage statement claim).

80. Ms. Yan calculated, based on review of the Company's payroll records, that the Company issued a total of at least 46,511 wage statements to a total of 791 Putative Class Members during the Applicable Period. (Yan Decl. ¶ 13.) She further determined that 459 of these 791 Putative Class Members received 41 wage statements or more during the Applicable Period, that the remaining 332 Putative Class Members received between 1 and 40 wage statements during that time period, and that these 332 remaining Putative Class Members, collectively, received 5,943 wage statements during that time period. (Yan Decl. ¶ 13.)

81. Accordingly, if Plaintiff's allegations are correct, the putative class would be entitled to recover $2,413,700 in wage statement penalties. Given the $50 penalty for the first wage statement and the $100 penalty for each subsequent wage statement, the 459 Putative Class Members who received 41 or more wage statements would be entitled to the maximum penalty of $4,000. These Putative Class Members, collectively, would be entitled to a penalty of $1,836,000 (459 Putative Class Members * $4,000). For the remaining 332 Putative Class Members, each wage statement would trigger a $100 penalty, except for the first wage statement to each of them, which triggers only a $50 penalty. These Putative Class Members, collectively, would be entitled to a penalty of $577,700 [(5,943 wage statements * $100 penalty) – (332 putative class members * $50 initial penalty)]. The 791 Putative Class Members, collectively, would be entitled to recover $2,413,700 in wage statement penalties ($1,836,000 + $577,700).

82. Accordingly, given the inputs above, Plaintiff and the other class members would be entitled to recover at least $2,413,700.

83. Thus, Plaintiff's Sixth Cause of Action places at least $2,413,700 in controversy.

**5. Plaintiff's Tenth Cause of Action for Waiting Time Penalties Places at least $1,714,564.80 in Controversy.**

84. Plaintiff's Tenth Cause of Action seeks waiting time penalties under California Labor Code section 203 for failure to timely pay wages due at termination. (FAC ¶¶ 88-92.) California Labor Code section 203 provides that, if an employer willfully fails to pay all wages due at termination, the employer must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of 30 days continuation wages. Cal. Lab. Code § 203(a).

85. Specifically, Plaintiff alleges that Defendants had a "consistent policy of failing to pay all wages fur [sic] and owed to Employees at the time of their termination or within seventy-two (72) hours of their resignation..." (FAC ¶ 24.)

86. Plaintiff further alleges that "Defendants failed to pay these Employees all wages due and certain at the time of termination or within seventy-two (72) hours of resignation," and that "Defendants' failure to pay wages, as alleged above, was willful in that Defendants knew wages to be due but failed to pay them." (FAC ¶¶ 90, 92.)

87. It is reasonable to assume that every employee terminated during the statutory period would have experienced at least one wage/hour violation—and therefore would not have been paid certain wages due— where plaintiffs allege a "laundry list" of potential wage/hour violations, as Plaintiff has done here. *Moppin v. Los Robles Reg'l Med. Ctr.*, 2015 WL 5618872 at *4 (C.D. Cal. Sept. 24, 2015); *Byrd v. Masonite Corp.*, 2016 WL 2593912 at *2-3 (C.D. Cal. May 5, 2016); *Torrez v. Freedom Mortgage, Corp.*, 2017 WL 2713400 at *4 (C.D. Cal. June 22, 2017); *Garcia*, *supra*, 2024 WL 4289895, at *6-8. As in *Byrd*, Plaintiff here has alleged "a broad, uniform policy of multiple Labor Code violations," 2016 WL 2593912 at *3, and "fails to assert any different rate of violation or submit evidence indicating a different rate of violation," *Id.* And similar to *Moppin*, Plaintiff alleges that Defendants had a "consistent policy or practice of failing to pay Employees for

all hours worked and failing to pay minimum wage for all time worked," and a consistent policy of "failing to pay all wages fur [sic] and owed to Employees at the time of their termination or within seventy-two (72) hours of their resignation." (FAC ¶¶ 17, 18, 24.) In *Torrez*, the Court concluded that the Complaint alleged a 100% violation rate for waiting time penalties by alleging "during the relevant time period, [defendant] intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by [defendant] their wages, earned and unpaid, within seventy-two hours of their leaving [defendant's] employ." 2017 WL 2713400 at *4. Similarly here, Plaintiff alleges that "Defendants failed to pay these Employees all wages due and certain at the time of termination or within seventy-two (72) hours of resignation," and that Defendants' "failure to pay wages, as alleged above, was willful in that Defendants knew wages to be due but failed to pay them." (FAC ¶¶ 90, 92.)

88. Moreover, as noted above, for purposes of calculating the amount-in-controversy, this Court can and should assume that each putative class member is owed at least one hour of unpaid minimum and/or overtime wages. Hence, each putative class member who was terminated did not receive all wages due to him or her at the time of termination, and any putative class member whose employment terminated more than 30 days ago is entitled to 30 days' continuation wages as a penalty under California Labor Code section 203. *Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (Cal. Ct. App. 1998) (a "proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days."); *Quintana v. Claire's Stores, Inc.*, No. 13-0368-PSG, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding that the defendants' 30 day waiting time penalties calculation was "a reasonable estimate of the potential value of the claims" where the complaint alleged that the defendants "regularly required" putative class members to work without compensation, and the defendants estimated that each putative class member "potentially suffered at least one violation that continues to be unpaid"); *Giannini v. Northwest Mut. Life Ins. Co.*, No. C 12-77 CW, 2012 WL 153196, at *4 (N.D. Cal. Apr. 30, 2012) (determining defendant's assumption of maximum waiting time penalties were reasonable "based on the allegations of Plaintiff's Complaint, which suggest that all class members were denied at least some form of compensation" during their employment).

89. Also as noted above, for purposes of calculating the amount-in-controversy, this Court can and should assume that each putative class member experienced one meal period violation and one rest period violation per week and worked one hour of unpaid minimum and/or overtime wages. On those reasonable assumptions, each putative class member would be owed at least one meal period premium, one rest break premium, and one hour of unpaid minimum and/or overtime wages for each week worked. Hence, for this additional reason, each putative class member who was terminated did not receive all wages due to him or her at the time of termination, and any putative class member whose employment terminated more than 30 days ago is entitled to 30 days' continuation wages as a penalty under California Labor Code section 203. *Stevenson v. Dollar Tree Stores, Inc.*, No. CIV S-11-1433 KJM, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (finding it reasonable for defendant to assume, in light of the allegations in the complaint that putative class members missed meal periods, that "all members of the proposed class … would have missed a meal period as described in the complaint at least once and were thus entitled to the waiting time penalty"); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *2 (C.D. Cal. Nov. 1, 2018) ("[a plaintiff's] allegations of unpaid wages are implicit allegations of maximum damages for waiting time penalties.") (collecting cases); *Mariscal*, 2021 WL 1400892 at * 3 ("[I]t is appropriate to assume each one of the 147 terminated class members was owed but not paid at least some of their wages at termination and accrued 30 days of waiting time penalties based on those unpaid wages.")

90. Plaintiff seeks penalties pursuant to Labor Code section 203 for all "Employees," (FAC, Prayer for Relief No. 8), and defines "Employees" as "all others similarly situated," (FAC, preamble). Plaintiff further states that he "brings this action on behalf of himself and all current and former Employees within the State of California who, at any time four (4) years prior to the filing of this lawsuit, are or were employed as non-exempt, hourly employees by Defendants NRG Energy, Inc. . . . [or] Vivint LLC . . ." (FAC ¶ 1.) Plaintiff expressly defines the "proposed class" as "all individuals employed by Defendants as non-exempt employees within the State of California at any time within four (4) years of the filing of this lawsuit." (FAC ¶ 28.)

91. Accordingly, if the allegations of the Complaint and Plaintiff's legal theories are correct, any individual employed by Defendant in a non-exempt position in California on or after

March 6, 2022through present would be entitled to penalties under California Labor Code section 226(e) for each wage statement issued during that time period.

92. If the allegations of the Complaint and Plaintiff's legal theories are correct, Defendants owe the maximum 30 days of continuation wages to each putative class member who terminated employment between March 6, 2022, and the present. *See Herrera v. C&J Clark America, Inc.*, 2025 WL 3171593 (N.D. Cal. Nov. 13, 2025) (amount placed in controversy by claim for wage statement penalties includes the entire four-year class period, regardless of possible shorter limitations period for wage statement claim).

93. A review of the Company's employment records reveals that there are at least 234 such individuals. (Yan Decl. ¶ 12.) If the allegations of the Complaint and Plaintiff's legal theories are correct, Defendants owe thirty (30) days of continuation wages to each of these 234 individuals. *See e.g. Duncan v. Baxalta United States Inc.*, 2025 WL 40482, *3 (C.D. Cal. Jan. 7, 2025) ("It is reasonable for [defendant] to assume each of the 182 discharged putative class members are eligible for waiting time penalties because if they were not, they would have no business in Plaintiff's putative class because they never suffered a labor code violation."); *Alarcon v. Target Corp.*, 2025 WL 2155371, *4 (C.D. Cal. July 28, 2025) (finding a 100% violation rate appropriate because the waiting time penalties were derivative of other alleged claims.)

94. The terminated employees earned at the time of termination, on average, at least $30.53 per hour. (Yan Decl. ¶ 12.)

95. Assuming, as set forth above, the maximum penalty of 30 days of continuation wages based on an eight-hour workday, each employee would be owed, on average, $7,327.20 ($30.53 /hour * 8 hours/day * 30 days), and this population would collectively be owed at least $1,714,564.80 ($7,327.20 * 234).

96. Thus, Plaintiff's claim for waiting time penalties under the Tenth Cause of Action places at least $1,714,564.80 in controversy.

**6. Plaintiff's Prayer for Attorneys' Fees Places an Additional $1,975,115.72 in Controversy.**

97. Plaintiff seeks attorneys' fees on behalf of the putative class for the work prosecuting their causes of action. (FAC ¶¶ 47, 54, 77; and Prayer for Relief, ¶ 20.) The Twelfth Cause of Action, moreover, incorporates the preceding causes of action, as it alleges that the conduct alleged constitutes an unlawful and/or unfair business act and practice in violation of Business and Professions Code section 17200, *et seq*. (FAC ¶¶ 99-108.) The Complaint therefore effectively seeks attorney's fees on all causes of action.

98. Attorneys' fees are properly included in the amount in controversy. *See, Guglielmino v. McKee Foods Corp*., 506 F.3d 696, 700 (9th Cir. 2007) (statutorily-mandated attorneys' fees are properly included in the amount in controversy for CAFA jurisdiction purposes); *see also, Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (attorneys' fees may properly be included in calculation of the amount of controversy where an underlying statute authorizes an award of attorneys' fees).

99. Although there is no *per se* rule that the amount of attorneys' fees in controversy in class actions is 25 percent of all other alleged recovery, *Fritsch v. Swift Transp. Co. of Ariz. LLC*, 899 F.3d 785, 796 (9th Cir. 2018), courts routinely grant attorneys' fees awards that range from 25% to 33% of the settlement or verdict amount. *See, e.g.*, *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (awarding 30% attorneys' fee award and compiling cases where range of attorneys' fee award ranged between 25% and more than 40%).

100. Accordingly, including attorneys' fees of 25% is reasonable when calculating the amount in controversy. "[T]he benchmark need only be adjusted when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Cortez v. United Natural Foods, Inc.*, No. 18-CV-04603-BLF, 2019 WL 955001, *7 (N.D. Cal. Feb. 27, 2019) (internal quotation marks and citation omitted); *see also Ramirez v. Benihana National Corp.*, 2019 WL 131843 at *2 (N.D. Cal. Jan. 8,

2019) (applying 25% benchmark post-*Fritsch* because no factors "reflect a departure from such benchmark is warranted"). No such adjustment is needed in a "typical wage and hour class action to which courts in this Circuit would likely apply the 25% benchmark rate." *Cortez,* 2019 WL 955001 at *7. Indeed, "[w]hen including attorneys' fees within the amount-in-controversy for jurisdictional purposes, courts in this circuit consistently use the 25% benchmark rate." *Garcia v. Lifetime Brands, Inc.*, 2016 WL 81473 at *4, n. 2 (C.D. Cal. Jan. 7, 2016); *accord Ramos v. Schenker, Inc.*, 2018 WL 5779978 at *3 (C.D. Cal. Nov. 1, 2018).

101. Accordingly, assuming the low-end 25% figure reflected in the case law, a reasonable and conservative assumption for purposes of establishing the amount-in-controversy, attorneys' fees in this matter would amount to at least 25% of the unpaid minimum and overtime wages, meal and rest break premiums, and wage statement and waiting time penalties sought in Plaintiff's First, Third, Fourth, Seventh, and Tenth Causes of Action, which, as detailed above, amount to **$**7,604,485.28 [$756,168 + $1,508,015.04 + $1,508,015.04 + $2,413,700.00 + $1,714,564.80 = $7,900,462.88]. Plaintiff's prayer for attorney's fees therefore adds at least $1,975,115.72 (25% of $7,900,462.88) to the amount-in-controversy.

102. This brings the total amount-in-controversy to $9,875,578.60 [$756,168 + $1,508,015.04 + $1,508,015.04 + $2,413,700.00 + $1,714,564.80 + $1,975,115.72 = $9,875,578.60], easily exceeding the $5 million threshold needed to establish federal jurisdiction under the Class Action Fairness Act. This calculation is conservative, as it does not include the amount placed in controversy by Plaintiff's Fifth and Eighth Causes of Action (which cannot be calculated with reasonable certainty at this time), and, for the other causes of action, relies on conservative estimates and assumptions where sufficient data is presently lacking to calculate the amount in controversy with greater precision.[4]

[4] Should the Court or opposing counsel request additional information, evidence and/or calculations to demonstrate that this Action places at least $5 million in controversy, Defendant reserves the right to refine the methodologies used here and calculate the amount-in-controversy with greater precision, which may significantly increase the result.

**C. Any Class Member is a Citizen of a Different State than Defendant.**

103. For purposes of establishing diversity under CAFA, this Court need only find that there is diversity between one putative class member and one defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a).

104. In addition, the citizenship of fictitiously named "Doe" defendants is to be disregarded for the purposes of removal based on diversity jurisdiction. 28 U.S.C. § 1441(a).

105. Pursuant to 28 U.S.C. section 1332(c), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." A corporation's headquarters is presumptively the location of its "principal place of business…." *Hertz v. Friend*, 130 S.Ct. 1181, 1192 (2010) ("[I]n practice [a company's principal place of business] should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control and coordination, i.e., the 'nerve center'").

106. At the time this action commenced in state court, NRG Energy, Inc. was, and still is, incorporated in the State of Delaware. (Declaration of Christine Zoino ["Zoino Decl."] at ¶ 4.) Its principal place of business at the time of the filing of the Complaint was, and still is, in the State of New Jersey. (Id. at ¶ 5.) Thus, for the purposes of federal diversity jurisdiction, NRG Energy, Inc. is a citizen of the State of Delaware and the State of New Jersey. As such, NRG Energy, Inc. is not a citizen of the State of California.

107. At the time this action commenced in state court, Vivint LLC. was, and still is, incorporated in the State of Utah. (Declaration of Christine Zoino ["Zoino Decl."] at ¶ 4.) Its principal place of business at the time of the filing of the Complaint was, and still is, in the State of Utah. (Id. at ¶ 6.) Thus, for the purposes of federal diversity jurisdiction, Vivint LLC is a citizen of the State of Utah. As such, Vivint LLC is not a citizen of the State of California.

108. For diversity purposes, an individual is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). An individual's domicile is the place he resides with the intention to remain or to which he intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

109. The First Amended Complaint alleges that "Plaintiff JOHNNY BANKS has resided in California and during the time period relevant to this Complaint was employed by Defendants as a non-exempt hourly employee within the State of California." (FAC ¶ 4.) The First Amended Complaint does not set forth any other allegations pertaining to Plaintiff's domicile, or citizenship. Defendant's employment records confirm that throughout Plaintiff's employment with Defendant, Plaintiff lived in the State of California, including the home address he provided for payroll purposes. (Declaration of Christopher Hawkins. at ¶ 3.) Further, Plaintiff's proposed class includes "all individuals employed by Defendants as non-exempt employees within the State of California at any time within four (4) years of the filing of this lawsuit." (FAC ¶ 28.) Thus, on information and belief, Plaintiff is a citizen of the State of California. Moreover, members of the proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California. *See, e.g.*, *Lew v. Moss*, 97 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of citizenship).

110. Since at least Plaintiff is a citizen of a different state than NRG Energy, Inc., the third requirement of CAFA jurisdiction is satisfied. Moreover, because neither NRG Energy, Inc. nor Vivint LLC is a citizen of California, the exceptions to CAFA jurisdiction under 28 U.S.C. § 1332(d)(3) and (d)(4) are inapplicable.

## IV. CONCLUSION

111. This Court, therefore, has original jurisdiction over Plaintiff's claims by virtue of the Class Action Fairness Act 28 U.S.C. § 1332(d)(2). This action is thus properly removable to federal court pursuant to 28 U.S.C. § 1441.

112. In the event this Court has a question regarding the propriety of this Notice of Removal, Defendants request that it issue an Order to Show Cause so that they may have the opportunity to more fully brief the basis for this removal.

/ / /

/ / /

/ / /

/ / /

WHEREFORE, Defendants remove this action to this Court.

DATED: July 27, 2026

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Christopher W. Decker
CHRISTOPHER W. DECKER
ORI LAVI
Attorneys for Defendants
NRG ENERGY, INC. and VIVINT LLC

97977867.v1-OGLETREE